## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ROBERT BARTLETT**, *et al.*, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No. 22-mc-130 (APM)** |
| ) | |
| **TAG HOLDINGS, LLC,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

### I.

Before the court is Plaintiffs' Motion for Attorneys' Fees and Expenses. Plaintiffs seek an award of attorneys' fees and costs in the amount of $89,298.69 against Defendant TAG Holdings LLC and its counsel, The Ashcroft Law Firm, LLC. For the reasons explained below, Plaintiff's motion is granted in part and denied in part.

### II.

On July 27, 2022, Plaintiffs attempted to serve TAG Holdings with a third-party subpoena, seeking documents relating to ongoing litigation in *Bartlett v. Société Générale de Banque au Liban SAL*, No. 19-cv-007 (CBA) (TAM) (E.D.N.Y. Jan. 1, 2019). *See* Fed. R. Civ. P. 45; Pls.' Mot. for Attorneys' Fees & Expenses, ECF No. 30 [hereinafter Pls.' Mot.], at 3. After TAG Holdings did not respond by the return date of August 22, 2022, Plaintiffs sent an email on September 7, 2022, to TAG Holdings Chief Executive Officer, David Ayres, and two lawyers with The Ashcroft Law Firm, Lori Sharpe Day and Mike Sullivan.[1] *See* Decl. of Dina Gielchinsky,

---

[1] TAG Holdings and The Ashcroft Law Firm are related insofar as they have overlapping personnel but are otherwise separate entities. *See* Def.'s Opp'n to Pl.'s Mot. for Third Interim J. of Accrued Sanctions & Req. for Relief Under Fed. R. Civ. P. 60(b)(6), ECF No. 19, Aff. of David Ayres, ECF No. 19-1, ¶¶ 3–5, 10.

ECF No. 1-2 [hereinafter Gielchinsky Decl.], Ex. C, at 16–17.[2]  Sharpe Day was the firm's Managing Partner.  *Id.*, Ex. D, at 21.  After hearing nothing, Plaintiffs' counsel then sent a follow-up email on September 19, 2022.  *Id.*, Ex. C, at 17.

That communication at first had its intended effect.  Sharpe Day on September 19 responded to Plaintiffs' counsel and asked about their availability for a phone call.  *Id.*, Ex. D, at 20–21.  Although Plaintiffs' counsel offered a time, no call ever occurred.  *Id.*, Ex. D, at 19.  Thereafter, Plaintiffs' counsel and Sharpe Day exchanged multiple emails attempting to connect, but to no avail.  *Id.*, Exs. E–G, at 24–36.  All told, Plaintiffs' counsel sent ten fruitless emails.

Plaintiffs then initiated this action by filing a Motion to Compel on December 22, 2022, ECF No. 1.  Plaintiffs emailed Sharpe Day and Ayres a copy of the Motion on January 20, 2022.  Pls.' Mot., Ex. B, ECF No. 30-3 [hereinafter Pls.' Ex. B], at 5.

Over the ensuing six months, the court entered multiple orders designed to coerce TAG Holdings to comply with the subpoena.  On February 10, 2023, the court docketed an Order Compelling Production of Documents, ECF No. 6.  When that Order went unanswered, the court granted Plaintiffs' Motion for Contempt on March 29, 2023, ECF No. 8.  Still without a response from TAG Holdings, the court entered on May 22, 2023, its first Interim Judgment of Accrued Sanctions, ECF No. 11.  Plaintiffs sent each of these orders to Sharpe Day and Ayres via email.  *See* Pls.' Ex. B.

Sharpe Day at last responded on June 16, 2023.  *Id.* at 2.  When she did, she falsely asserted that she had previously communicated to Plaintiffs' counsel that TAG Holdings had no responsive records.  *See id.*  Plaintiffs immediately disputed this assertion, to which Sharpe Day offered no response.  *See* Pls.' Mot., Ex. C, ECF No. 30-4, at 2–3.

---

[2] All page references to exhibits are to the CM/ECF page number.

In mid-July 2023, Plaintiffs had their first oral communications with Sharpe Day. During two telephone conferences, she promised that TAG Holdings would produce documents at first by July 17, 2023, and then by July 26, 2023.  *See* Pls.' Mot., Exs. D–E, ECF Nos. 30-5–30-6, at 2.  Plaintiffs did not receive any documents.  *See id.*

Plaintiffs then filed a Motion for Second Interim Judgment of Accrued Sanctions, which the court granted on August 3, 2023, ECF No. 14.  Plaintiffs sent the Order to Sharpe Day and Ayres via email.  *See* Pls.' Mot. for Third Interim J. of Accrued Sanctions, ECF No. 15 [hereinafter Third Mot.], Ex. B, ECF No. 15-3, at 2.

Plaintiffs again received no documents, and at this point, TAG Holdings still had not entered an appearance in this matter.  Plaintiffs then filed a Motion for Third Interim Judgment of Accrued Sanctions ("Third Motion") on August 17, 2023.  *See generally* Third Mot.

Apparently, the third motion was the charm.  TAG Holdings appeared in this matter through counsel, Mike Sullivan of The Ashcroft Law Firm, on August 25, 2023, ECF Nos. 17–18.  Weeks later, on September 14, 2023, TAG Holdings opposed Plaintiffs' Third Motion and moved to vacate the court's four prior orders pursuant to Federal Rule of Civil Procedure 60(b)(6) ("Rule 60(b)(6) Motion"), ECF No. 19.  Following extensive briefing, the court vacated the contempt orders but not the order compelling production, and it denied Plaintiffs' Third Motion.  *See* Hr'g. Tr., Feb. 15, 2024, ECF No. 26, at 14:17-23.  The court so held because TAG Holdings had shown that Plaintiffs had not properly served it with the subpoena, and because of that failure, the court lacked the authority to hold it in contempt.  *Id.* at 5:7–9:24.  Although the court largely decided in TAG Holdings' favor, it emphasized that "nothing in the ruling should be taken as an indication of a position on fees and costs."  *Id.* at 16:23–17:1.

Plaintiffs now move for the attorneys' fees and costs they incurred litigating this action, as well as for time expended to prosecute their fees petition.

### III.

Plaintiffs offer four grounds for their requested award: (1) Rule 37; (2) Rule 45; (3) 28 U.S.C. § 1927; and (4) the court's inherent authority. *See* Pls.' Mot. at 10–17. The court considers each in turn.

### A.

Rule 37 authorizes courts to award reasonable expenses, including attorneys' fees, when a party fails to comply with discovery obligations. *See* Fed. R. Civ. P. 37(a)(5)(A), (b)(2)(C). Under Rule 37(a)(5)(A), if a motion to compel is granted or if the requested discovery is provided after the motion is filed "the court must . . . require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorneys' fees." Rule 37(b)(2)(C) similarly mandates fee-shifting when "a party or a party's officer . . . fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2).

By its terms, however, Rule 37 does not govern these proceedings. It applies only to discovery disputes arising under that rule and only to the parties of a case and their attorneys. *See* Fed. R. Civ. P. 37(a)(5)(A), (b)(2)(C); *see Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1173 (D.C. Cir. 1985) (affirming the denial of Rule 37 sanctions because discovery was not originally compelled under Rule 37 and because movant was not a party). Here, the parties' dispute arose under Rule 45, which authorizes subpoenas to third parties. Rule 37 therefore does not provide a basis for a fees award.

**B.**

As relevant here, Rule 45 provides only one remedy for noncompliance with a subpoena: contempt. *See* Fed. R. Civ. P. 45(g) ("The court . . . may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it."). It does not authorize courts to impose attorneys' fees or expenses as a sanction for noncompliance. *See In re Exxon Valdez*, 142 F.R.D. 380, 385 (D.D.C. 1992) ("The only sanction provision in Rule 45 is the contempt provision . . . ."). Accordingly, a fees award cannot be maintained under Rule 45.

**C.**

Under 28 U.S.C. § 1927, any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Attorney behavior "must be *at least* 'reckless' to be sanctionable under [this] section." *United States v. Wallace*, 964 F.2d 1214, 1217 (D.C. Cir. 1992). Recklessness is a "high threshold" that generally "requires deliberate action in the face of a known risk, the likelihood or impact of which the actor inexcusably underestimates or ignores." *Id.* at 1219–20. In the D.C. Circuit, sanctions under this provision may be imposed on law firms. *See LaPrade v. Kidder Peabody & Co.,* 146 F.3d 899, 901 (D.C. Cir. 1998).

**1.**

The conduct of attorney Sharpe Day meets § 1927's demanding standard. Her actions are inexplicable. The conduct is unbecoming of any lawyer, let alone one with her seniority and status as Managing Partner. Neither TAG Holdings nor The Ashcroft Law Firm has attempted to explain, let alone justify, why it occurred.

Sharpe Day knew of Plaintiffs' effort to subpoena TAG Holdings as early as September 19, 2022. *See* Gielchinsky Decl., Ex. D, at 20–21. Plaintiffs' counsel made repeated attempts over the next six weeks to meet and confer, but Sharpe Day never did so. Then, after Plaintiffs filed suit, for the next six months Sharpe Day ignored counsel's email communications, as well as the filings and orders entered in the case. *See* Pls.' Ex. B. When Sharpe Day finally responded to Plaintiffs' counsel in mid-June 2023—only after the court had entered the first order of accrued sanctions—she claimed to have previously told Plaintiffs that TAG Holdings has no responsive records. *See id.* at 2. That was false. There had been no such communication.

Sharpe Day then took a different tack. Instead of ignoring Plaintiffs altogether, this time she engaged, telling them that TAG Holdings would produce records. *See* Pls.' Mot., Exs. D–E, at 2. She postponed production twice in July 2023, ultimately delivering nothing. *See id.* This led Plaintiffs to file two additional motions for accrued sanctions before TAG Holdings entered an appearance—more than eight months after the start of the case. *See* Third Mot. at 1.

Meanwhile, Sharpe Day was also ignoring her client's repeated pleas to act. After receiving Plaintiffs' initial email, TAG Holding's CEO, David Ayres, asked Sharpe Day to "please advise." *See* Aff. of David Ayres in Supp. of Def.'s Opp'n to Pls.' Mot. for Third Interim J. of Accrued Sanctions & Req. for Relief Under Fed. R. Civ. P. 60(b)(6), ECF No. 20 [hereinafter Ayres Aff.], Ex. L, ECF No. 20-12, at 2. After the court entered the order compelling production, Ayres asked Sharpe Day, "What do I need to do here with this?" and they apparently conferred. *Id.*, Exs. M–N, ECF Nos. 20-13–20-14. Then, after receiving the contempt order, Ayres said to Sharpe Day, "This sounds bad. What's going on?" *Id.*, Ex. O, ECF No. 20-15, at 2. In mid-June, in reference to Sharpe Day's representation to Plaintiffs' counsel that she had previously advised that TAG Holdings had no records, Ayres asked Sharpe Day, "At this point, do we need to file something

with the court sharing your comments below[?]" *Id.*, Ex. Q, ECF No. 20-17, at 2. And when Plaintiffs' counsel responded that there had been no such communication, Ayres wrote to Sharpe Day, "Please keep me posted. I don't care to be pulled into court." *Id.*, Ex. R, ECF No. 20-18, at 2. After receiving the second order for accrued sanctions, Ayres pleaded with Sharpe Day, "Lori?????" *Id.*, Ex. S, ECF No. 20-19, at 2. It was at that point—11 months after learning of the subpoena—that Ayres contacted Sullivan at The Ashcroft Law Firm "to request his assistance." *Id.* ¶¶ 51–52.

In view of the record evidence, the court has little trouble concluding that Sharpe Day acted recklessly—that is, she engaged in "deliberate action in the face of a known risk, the likelihood or impact of which [she] inexcusably underestimate[d] or ignore[d]." *Wallace*, 964 F.2d at 1220. The "known risks" were many: There was the risk that her client would be held in contempt and subject to penalties. There was the risk that Plaintiffs would incur increasing fees and costs as they repeatedly tried to get TAG Holdings to act. And there was the risk this court would have to expend unnecessary time and resources as result of her inaction. All these risks came to pass. Although TAG Holdings and The Ashcroft Law Firm attempt to downplay Sharpe Day's conduct, *see* Def.'s Opp'n to Pls.' Mot., ECF No. 32 [Def.'s Opp'n], at 10–14, her behavior was "singularly egregious," and it is sanctionable under § 1927. *See Wallace*, 964 F.2d at 1220.

The Ashcroft Law Firm seeks to avoid responsibility on the theory that it cannot be "liable for the acts of TAG's former counsel." Def.'s Opp'n at 11. Its argument seems to be that Sharpe Day represented TAG Holdings individually, and not as a lawyer of the firm, and therefore The Ashcroft Law Firm cannot be liable for her actions. *See id.* But that argument is implausible. There is no evidence that Sharpe Day had a separate practice, or that she had gone rogue and was operating outside her capacity as a lawyer of The Ashcroft Group. In fact, the evidence is to the

contrary. *See* Ayres Aff. ¶ 35 ("TAG retained Attorney Sharpe Day to represent it in this matter.");
Pls.' Mot., Ex. D, at 6 (Sharpe Day writing Plaintiffs' counsel, "I am working on this solo right
now but I do need to engage *another partner in our office*." (emphasis added)). The Ashcroft Law
Firm is therefore responsible for Sharpe Day's conduct. *See LaPrade*, 146 F.3d at 900 (affirming
fees award against law firm under § 1927).

## 2.

Having determined Plaintiffs are entitled to an award under § 1927, the court now turns to
determine how much. Plaintiffs seek $89,298.69. *See* Pls.' Reply in Supp. of Mot. for Att'ys' Fees
& Expenses, ECF No. 33 [hereinafter Pls.' Reply], at 18. A reduction of that sum is required to
ensure that the causal standard between the fees incurred and counsel's misconduct is satisfied.
*See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 n.5 (2017) ("[U]nder 28 U.S.C.
§ 1927, a court may require an attorney who unreasonably multiplies proceedings to pay attorney's
fees incurred '*because of*' that misconduct." (emphasis added)); *Baca v. Berry*, 806 F.3d 1262,
1268 (10th Cir. 2015) ("[T]here must be a causal connection between the objectionable conduct of
counsel and multiplication of the proceedings, such that the conduct result[ed] in proceedings that
would not have been conducted otherwise." (internal citation and quotation marks omitted)).

"Congress's use of the verb 'multipl[y]' in the text of [§ 1927] clearly contemplates that,
to be sanctionable thereunder, conduct must have an effect on an already initiated proceeding."
*Jensen v. Phillips Screw Co.*, 546 F.3d 59, 65 (1st Cir. 2008) (alteration in original). Sanctions
under § 1927 therefore are not available for "the initial pleading, as the proceedings in a case
cannot be multiplied until there *is* a case." *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 101
(3d Cir. 2008); *see also Jensen*, 546 F.3d at 65 ("[W]e join an unbroken band of cases across the
courts of appeals holding that a lawyer cannot violate section 1927 in the course of commencing

an action." (collecting cases)). The Motion to Compel was the "initial pleading" in this case, so Plaintiffs cannot recover the fees and expenses incurred in its preparation and filing. The court excludes $6,425 in fees and $135.81 in costs attributable to that motion. *See* Pls.' Mot., Ex. A, ECF No. 30-2 [hereinafter Pls.' Ex. A], at 2–3; Appendix.

In addition, sanctions under § 1927 are available only for conduct that multiples proceedings "unreasonably and vexatiously." 28 U.S.C. § 1927. Courts have required such conduct be "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Alexander v. FBI*, 186 F.R.D. 6, 11 (D.D.C. 1998) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)). Here, the work that Plaintiffs' counsel had to undertake in response to TAG Holdings' Rule 60(b)(6) Motion was not caused by unreasonable and vexatious behavior. Indeed, the court largely agreed with TAG Holdings on the merits and vacated the sanctions orders. Plaintiffs therefore cannot recover fees for the time spent on their opposition to the Rule 60(b)(6) Motion.

The precise value of that work is difficult to discern. Plaintiffs filed a combined opposition and reply in support of their Third Motion, ECF No. 22. Plaintiffs may recover fees associated with the latter, but not the former. Counsel's work on the reply is compensable because it is causally related to Sharpe Day's conduct—but for her actions, Plaintiffs would not have had to file a Third Motion and reply. Counsel's billing records do not, however, clearly disaggregate these two components. *See* Pls.' Ex. A, at 4–6. To ensure that the award reflects only those fees recoverable under § 1927, the court excludes all entries that appear solely related to Plaintiffs' opposition to the Rule 60(b)(6) Motion. For entries reflecting work on both aspects, the court awards 50% of that time. The result is a reduction by $16,590. *See* Appendix (distinguishing between fully and half-compensated time).

9

In addition, the court retains discretion to exclude from the fees award "hours that were not 'reasonably expended,'" including time that is "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (internal citation omitted). Plaintiffs seek attorneys' fees for attending the remote hearing held on February 15, 2024. *See* Pls.' Ex. A, at 6. The hearing was attributable in part to sanctionable conduct, as it concerned both Plaintiffs' Third Motion and Defendant's Rule 60(b)(6) Motion. But Plaintiffs' staffing of five attorneys for a single hearing reflects an "unnecessary" multiplication of effort. *See Hensley*, 461 U.S. at 434; Pls.' Ex. A, at 6. Because only a portion of the hearing is subject to § 1927 and not all time billed was "reasonably expended," the court reduces the fees associated with these entries, including preparation time, by 75%. *See* Appendix. The court reduces the award by $1,229.25. *See id.*

As for Plaintiffs' fees-on-fees request, such award is generally limited by the success on petition itself. *See Hensley*, 461 U.S. at 440 ("[W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained."). To reflect Plaintiffs' partial success, the court applies a proportional reduction to the fees incurred in preparing the fees petition and reply. Plaintiffs are awarded 51.64% of the fees requested for these filings, thereby reducing the requested award by $18,812.89. *See* Appendix.[3]

## D.

Finally, to the extent that fees and costs requested but not granted under § 1927 might otherwise be awarded under the court's inherent authority, *see* Pls.' Mot. at 16–17, the court declines to exercise that power. Such sanctions require a showing of "bad faith." *Wallace*, 964 F.2d at 1217. "Bad faith" in this context means that the lawyer acted with "the *purpose* of" creating

---

[3] To the extent Defendant also argues that counsel's hourly fees are excessive for the work done here, Pls.' Opp'n at 17–18, the court rejects that contention. The work at issue is part and parcel of the complex federal litigation that led to this action.

"unreasonable delay." *Id.* at 1219.  Although the court finds Sharpe Day's conduct was "singularly egregious," it cannot conclude on this record that the reason for her recalcitrance was to "unreasonably . . . delay the[se] proceedings." *Id.* at 1219–20.  Additional fees therefore will not be awarded pursuant to the court's inherent authority.

## IV.

For the foregoing reasons, Plaintiff's Motion, ECF No. 30, is granted in part and denied in part.  The court awards Plaintiffs $46,115.85 in attorneys' fees and expenses under 28 U.S.C. § 1927.

Dated:  August 15, 2025

_____
Amit P. Mehta
United States District Judge